IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 16-41-BLG-SPW |
| | CV 21-30-BLG-SPW |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION |
| | AND DENYING CERTIFICATE OF |
| PEDRO CARRASCO, JR., | APPEALABILITY |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Pedro Carrasco,

Jr.'s motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. §

2255. Carrasco is a federal prisoner proceeding pro se. After reviewing the motion

and the record, the Court will deny the motion.

## I. Preliminary Review

Before the United States is required to respond, the Court must determine

whether "the motion and the files and records of the case conclusively show that

the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules

Governing Section 2255 Proceedings for the United States District Courts. A

petitioner "who is able to state facts showing a real possibility of constitutional

error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98

F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring)

1

(referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On April 21, 2016, a grand jury indicted Carrasco on Conspiracy to Distribute Methamphetamine and Possess with Intent to Distribute Methamphetamine, a violation of 21 U.S.C. § 846 (Count I), Possession with Intent to Distribute Methamphetamine, a violation of 21 U.S.C. § 841(a)(1) (Count II), Felon in Possession of a Firearm, a violation of 18 U.S.C. § 922(g)(1) (Count III), Possession of a Firearm in Furtherance of a Drug Trafficking Crime, a violation of 18 U.S.C. § 924(c)(1)(A) (Count IV), and Conspiracy to Commit Money Laundering, 21 U.S.C. § 1956(h) (Count V). (Doc. 2.) Carrasco was twice appointed counsel. (Docs. 5 and 12.)

Then began a long series of pretrial motions, hearings, and continuances. Carrasco's second attorney was replaced by a third on July 7, 2016. (Doc. 24.) Carrasco's attorney moved to obtain information about a confidential source from the search warrant related to his house (Doc. 18) and moved to suppress evidence from that search (Doc. 39), Carrasco's initial statement to law enforcement (Doc.

2

58), and evidence from a GPS tracker (Doc. 60). Carrasco himself mailed several ex parte documents directly to chambers. The Court held a motions hearing, and the motions were denied. (Doc. 87, 89.) Carrasco himself then sought recusal of the judge (Doc. 90) and replacement of his counsel (Doc. 97). Another hearing occurred, resulting in the replacement of his third counsel. (Doc. 104.) The request for recusal was denied. (Doc. 113.)

Six weeks later, Carrasco's fourth counsel sought to withdraw, and Carrasco's fifth counsel, Wendy Holton, was appointed. (Doc. 118.) Carrasco continued to file various requests directly with the Court, including another request to dismiss his counsel (Doc. 134), which resulted in another motion hearing. (Doc. 139.) This time, the replacement was denied. Carrasco's new counsel Holton filed another motion to interview a confidential source witness (Doc. 131), a motion for a detention hearing (Doc. 149), and a motion to obtain two sensitive U.S. documents (Doc. 155). Eventually, on October 2, 2017, eighteen months after he was arraigned, Carrasco moved to change his plea. (Doc. 165.) At his change of plea hearing, Carrasco pleaded guilty to Counts I and V of the Indictment. (Doc. 169.)

A presentence report (PSR) was prepared. At sentencing, the Court adopted the report without change. Based on a total offense level of 35 and a criminal history category of II, Carrasco's advisory guideline range was 188 to 235 months.

To fulfill the sentencing objectives of 18 U.S.C. § 3553(a), the Court varied downward to a sentence of 168 months in prison on Count I and 36 months on Count V, concurrent, to be followed by five-year and three-year terms, concurrent, of supervised release. (Docs. 186 and 187 at 2-3.)

Carrasco appealed. He challenged this Court's decision not to hold a *Franks* hearing. He also asserted that he had received ineffective assistance of counsel. On June 4, 2020, Carrasco's arguments were rejected, and his conviction was affirmed. The Ninth Circuit Court of Appeals declined to consider his ineffective assistance argument for the first time on direct appeal. (Doc. 221, *United States v. Carrasco*, No. 18-30033 (9th Cir. June 4, 2020).)

Carrasco filed a petition for writ of *certiorari*. The United States Supreme Court denied the petition on January 28, 2021. (Doc. 226.)

Carrasco timely filed his § 2255 motion on March 19, 2021. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

### III. Claims and Analysis

Carrasco's motion includes three grounds. Count I is ineffective assistance of counsel related to Wendy Holton suggesting that Carrasco plead guilty, while reserving the right to appeal denial of various pre-trial motions and filing certain documents with the Court under seal. (Doc. 228 at 3.) Count II relates to Holton's decision not to ask again for a *Franks* hearing, following additional discovery that

4

Carrasco believes would have made a difference in the Court's analysis. (Doc. 228 at 4.)  In Count III, Carrasco objects to his sentence being based on pure methamphetamine, rather than mixed, as he asserts is stated in the plea agreement. (Doc. 228 at 4.) Carrasco submitted both a brief (Doc. 229) and a supplement (Doc. 232) in support of his motion.

**A. Count I**

Carrasco's first two claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  At this stage of the proceedings, Carrasco must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

Carrasco's main concern in Count I appears to be that he was unable to get his ineffective assistance claim reviewed on direct appeal because Holton was incorrect in believing some additional documents submitted to the district court would be reviewed by the Court of Appeals.  (Doc. 229 at 1; 228 at 3.) Carrasco asserts that Holton "knowingly with[held] relevant information from the Court." (Doc. 228 at 3). The grounds for this are elaborated in his petition for certiorari, which is attached as an exhibit to his motion. His argument walks a thin line,

5

however, between being a rehash of his substantive argument about whether the motion to suppress was properly denied or a *Franks* hearing should have been held, and whether Holton was ineffective for not properly teeing up these unfiled motions for appellate review, including whether her performance was adequate. (Doc. 229-1 at 104-105.) He specifically refers to the fact that this Court did not review the CS's statement in its entirety in its analysis of the motion to suppress, (Doc. 229-1 at 105), thereby preventing that review by the Court of Appeals. (Doc. 229-1 at 112.)

The first part of this assertion, whether Holton really was ineffective in not attacking the warrant again, is discussed below. But the second question, whether Holton was ineffective for failing to tee up the issue of her performance for direct review, fails on the second prong of the *Strickland* test. On the one hand, there is nothing she could have done differently in the trial court after she had decided not to file the motion to suppress or request a *Franks* hearing. If she did not believe the motion was meritorious, she was under an ethical obligation not to file it. She did what she thought would help him, which is file the information for review and use by Carrasco's appellate counsel. (Doc. 181.)

Further, even if this decision were construed as ineffective assistance of counsel, Carrasco has not been prejudiced in the slightest by the Court of Appeals' decision not to consider his IAC claim. He has had it considered here and retains

6

the possibility of review of this decision. Therefore, Holton's actions were reasonable in the context in which they arose, and Carrasco does not carry his *Strickland* burden on this claim.

## B. Count II

Count II is a more straightforward claim asserting that Holton's decision not to request a *Franks* hearing or file a second motion for reconsideration of the Court's order denying the motion to suppress evidence from the search of Carrasco's home was unreasonable.[1] (Doc. 228 at 6.) Carrasco's brief places special weight on the CS's statement, asserting that if the Court had had that information at the time, it would have decided the issue differently. (Doc. 229 at 2.) Carrasco's motion helpfully includes letters that Holton wrote to Carrasco and to the Office of Disciplinary Counsel (ODC) after Carrasco filed a complaint against her. (Doc. 229-1 at 1-4 and 6-13.) These letters explain Holton's thinking about why she did not pursue the search warrant issues further.

The Court also has reviewed the transcript of the CS's statement, which Carrasco believes bolsters his case for a *Franks* hearing and motion to suppress by undermining the CS's supposed knowledge about the conspiracy.

Carrasco asserts that the CS did not really know anything, by cherry-picking

---

[1] Carrasco's third counsel, who filed the original motions to suppress, also attempted to file, without success, a motion for reconsideration of the denials. (Doc. 62.)

various ambiguous statements. This misrepresents the record. The CS's statement makes it clear s/he was very knowledgeable about the ongoing, years-long operation to bring methamphetamine to and cash from Carrasco in Billings. Not knowing the particulars of the final outing does not undermine the credibility of the statement read as a whole and the information about the entire operation conveyed by the CS.

In any event, the very issues questioned by Carrasco in his original motion, in his motion to file a motion to reconsider, in his pro se motion for recusal, and in his appeal, were all considered by the Court of Appeals, which concluded that even without the information Carrasco did not like, the application for a search warrant was still sufficient. (Doc. 221.) The Court of Appeals specifically referred to the issues of the CS's criminal history, the (perhaps phantom) February 6 phone call, and the differing statements regarding the Laurel truck stop and Carrasco's residence in its memorandum and concluded that even if all of those issues were removed, the warrant still would have issued. (Doc. 221 at 2.)

Upon review of the record, the Court agrees. Holton's performance was not unreasonable, and another motion to reconsider, or for a *Franks* hearing, would have resulted in the same denial of the motion to suppress. Failure to file a motion that has no support in the law is not unreasonable. *See, e.g., Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). Nor was Carrasco prejudiced, because meritless

motions are not granted. On both prongs of the *Strickland* test, then, Holton's

efforts were not ineffective. This claim is denied.

### C. Count III

Under the label of "lack of notice," Carrasco claims that he was incorrectly

"sentenced under the statute for pure methamphetamine."[2] (Doc. 228 at 4.) He

asserts that he agreed to plead guilty to an amount of at least 500g containing a

detectable amount of methamphetamine, but in the end, he was sentenced to that

amount of actual methamphetamine, changing his guideline range by two levels.

Carrasco's plea agreement and the offer of proof that supported it did not

specify the amount of methamphetamine that the U.S. asserted it could prove at

trial. The plea agreement says only "at least 500 grams or more of a substance or

mixture containing a detectable amount of methamphetamine." (Doc. 167 at 4.)

The offer of proof says the U.S. could prove that Carrasco was involved with

multi-pound quantities of meth over the course of four years. (Doc. 168 (document

under seal.)) This offer of proof does refer to the plea agreement in which Carrasco

admitted an amount of at least 500g over several years. (*Id.*) The offer of proof

includes the quantity of methamphetamine from February 7, 2016, and Carrasco

---

[2] This assertion is an error of law—the statute itself makes distribution (as relevant
here) the crime possession. The amount is relevant only for sentencing, and 21
U.S.C. § 841 includes the higher penalty for amounts of 500g above of admixture
or 50g or above of actual methamphetamine.

heard and pleaded guilty to that information. He was fully aware that he would be sentenced based on that event.

The PSR is the first document that specifically states the amount of actual methamphetamine that would be attributed to Carrasco. Despite describing offense conduct over years with multi-pound quantities of methamphetamine, the probation officer only attributed to Carrasco the meth found in his house on February 10, 2016 and in the car during the February 7, 2016 traffic stop. That total was 1075.6 grams, leading to a base offense level of 34. To get a lower level, he would have had to be attributed with less than 500g, i.e., less than half. Carrasco did not object at that point, which would have been his opportunity. Nor did he object at sentencing itself.

Further, Carrasco waived his right to appeal his sentence in his plea agreement. (Doc. 167 at 8.) And the right to file a §2255 motion regarding the sentence was specifically waived. (*Id.*) The plea agreement states that the crimes to which he was pleading guilty carried a mandatory minimum sentence of ten years (Count I) and a maximum sentence of twenty years (Count V), respectively. (Doc. 167 at 2.) Carrasco attempts to get around his waiver by suggesting that the U.S. breached its contractual agreement with him, thereby voiding the waiver. (Doc. 232.) However, at his change of plea hearing, Carrasco specifically stated that he understood that he was pleading guilty without knowing what his final sentencing

guideline would be. (Doc. 199 at 19.) And Carrasco's plea was to the statute itself, based on his knowledge of what he had done. There was no explicit promise at that point regarding any specific amount or sentencing guideline. Carrasco waived his right to appeal this aspect of his sentence, both in his plea agreement, and by not raising this issue on direct appeal.

In the alternative, Carrasco asserts another ground of ineffective assistance, suggesting that Holton should have objected to the quantity but did not. (Doc. 232.) Carrasco has not alleged that he raised this issue with her or that she had any reason to know that the quantity was not accurate. The PSR attributes only the amounts actually confiscated by law enforcement, so Holton had no reason to believe that amount was incorrect. Carrasco cannot carry his *Strickland* burden. He cannot show she was unreasonable not to question something she had no reason to believe was wrong, and he cannot show that if she had, the outcome of his proceedings would have been any different.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Carrasco does not identify any respect in which counsel's performance was unreasonable. Nor does he identify any reasonable probability of a different outcome if counsel had done anything differently. As there was no legal basis for counsel to challenge the search warrant or the amount of pure methamphetamine, there is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS ORDERED:

1. Carrasco's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 228) is DENIED.

2. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Carrasco files a Notice of Appeal.

4. The clerk shall ensure that all pending motions in this case and in CV 21-30-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Carrasco.

DATED this __12th__ day of August, 2021.

Susan P. Watters
United States District Court

12